UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ANITA GAINES,　　　　　　　　　　　） | |
| 　　　Plaintiff,　　　　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　　　） | |
| v.　　　　　　　　　　　　　　　　　） | Case No. 1:12-cv-276 |
| 　　　　　　　　　　　　　　　　　　） | (Collier/Carter) |
| CAROLYN W. COLVIN[1]　　　　　　　） | |
| Commissioner of Social Security　　　　） | |
| 　　　Defendant　　　　　　　　　　　） | |

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. 9), defendant's Motion for Summary Judgment (Doc. 11) and Plaintiff's Response Memorandum (Reply) (Doc. 13).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For the reasons stated herein, I **RECOMMEND** the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g)..

<u>Plaintiff's Age, Education, and Past Work Experience</u>

Plaintiff was 48 years old on her disability onset date and 49 years old at the time of the ALJ's Decision (Tr. 97). She has past work as a commercial sewer (which she described as requiring the lifting of large bolts of fabric up to 50 pounds), an assistant teacher (described as requiring her moving textbooks, reams of paper to the copy room, occasionally moving a student's desk, and standing at a chalkboard for several hours a day), and a textile calendar

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and is therefore substituted for Commissioner Michael J. Astrue as the Defendant in this suit.

operator (with duties described to include moving large buggies of fabric to a calendar/compactor machine to finish fabric). Tr. 174-185.

Claim for Benefits

Plaintiff filed her application for a period of disability and disability insurance benefits under the Act on July 14, 2009 alleging disability since May 22, 2009. Her application was denied initially and upon reconsideration. Plaintiff then requested a hearing, which was held in Chattanooga, Tennessee before Administrative Law Judge (ALJ) John Proctor on December 1, 2010. Plaintiff testified at the hearing, represented by counsel. Following the hearing, the ALJ issued an unfavorable decision on February 16, 2011 finding the claimant capable of performing past work. Plaintiff then sought review by Defendant's Appeals Council, which was denied by letter dated June 15, 2012. Thus the decision of the ALJ became the final administrative action in the case. Plaintiff has exhausted her administrative remedies, and her claim is properly before this court for judicial review.

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has

2

done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case she cannot return to her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which the claimant can perform considering her age, education and work experience. *Richardson v. Secretary v. Secretary of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review to be applied by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side of the issue, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for the Commissioner's merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary of Health & Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since May 22, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; obesity; dysthymic disorder; and generalized anxiety disorder (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can do unskilled and low level semiskilled work (SVP-1 to -3); moderately limited in ability to deal appropriately with co-workers, supervisors, and the general public; and moderately limited in adapting to work-related changes.

6. The claimant is capable of performing past relevant work as an industrial sewing machine operator, light exertional level, semiskilled (SVP-3); teacher's aide, light, semiskilled (SVP-3); and textile worker, light, semiskilled (SVP-3). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 22, 2009, through the date of this decision (20 C.F.R. 404.1520(f)).

(Tr. 16-21).

## Issues Raised

I. Whether the RFC assessment is supported by substantial evidence in light of the failure of the ALJ to perform a function by function analysis?

II. Whether the ALJ erred when he failed to proffer to counsel a physical consultative opinion of a State Agency Physician, Dr. Ferlic, which was inconsistent with the ALJ's RFC assessment, and whether this failure violated Plaintiff's due process rights?

## Relevant Facts

The Record reflects that Plaintiff has complained of pain and discomfort since 2009 due to multilevel degenerative disc disease in her spine (Tr. 262). An MRI of May 29, 2009, showed extruded disc fragments in her lower back at L3-4, L4-5, and L5-S1 with fragments of these discs extending into the neuroforaminal space on both sides. Spondylosis was found, as well (Tr.

4

269, 271). She also has myofascial pain in her upper and middle spine. Plaintiff has been prescribed strong, narcotic pain medications and muscle relaxers such as Mobic, Robaxin, and Lortab for her symptoms of pain and lower extremity numbness and tingling (Tr. 262). After these medications were ineffective at controlling her pain, she was given a lower-back (L4-5) epidural steroid injection (Tr. 263). Plaintiff also tried physical therapy and trigger point injections (Tr. 269).

In 2010, Plaintiff continued treatment for chronic back pain from her primary care physician, Dr. Chris Horton, M.D. (Tr. 387-391). Dr. Horton prescribed various medications to address her back pain, including Lortab (a narcotic pain medication) and Flexeril (a muscle relaxer) (Tr. 388). Plaintiff was treated by Dr. Dan Logan, M.D. (family practitioner) for cervical spine arthritis in 2010, as well (Tr. 409).

At the hearing, Plaintiff testified that she can stand and/or walk for 10-15 minutes before she needs to rest, and she needs to rest for 15-30 minutes (Tr. 35). She stated that it is "painful to sit," and that she can sit for about 15 minutes at a time (Tr. 35). She testified that "four out of seven days" are "bad days" in which she can do nothing but lay in her recliner or on the couch (Tr. 36).

In addition to her physical impairments, Plaintiff suffers from several mental impairments, including bipolar disorder, dysthymic disorder, anxiety disorder, and obsessive compulsive disorder.

Stephen Cartwright, M.S., completed a psychological consultative exam for DDS on October 14, 2009 (Tr. 345-353). Mr. Cartwright opined moderate limitations based on a provisional diagnosis of dysthymic disorder and a history of generalized anxiety disorder (Tr. 349, 51).

Dr. Frank Kuptas, Ph. D. completed a "Psychiatric Review Technique" form for DDS on December 16, 2009. Tr. 357-373. Dr. Kuptas diagnosed "anxiety-related disorder" and "affective disorder." (Tr. 357). Dr. Kuptas opined some moderate functional limitations (Tr. 371-373). Plaintiff submitted records from Volunteer Behavior Health where she was diagnosed with severe bipolar disorder with psychotic features and obsessive compulsive disorder (Tr. 379). Plaintiff was experiencing severe symptoms such as visual hallucinations when going outside at night ("she sees something outside the corner of her eye …"). She was only sleeping 4-5 hours per night. She had racing thoughts, daily crying episodes (since 2009), and panic attacks. She suffered from hopelessness ("not worth living"), dreams about hurting others ("beating daughter's ex- with baseball bat"), anger (could not drive due to anger), impulsiveness (problems shopping), and trouble concentrating. She was given a global assessment of functioning ("GAF") score of 50, which corresponds to:

Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34, 4th ed. Text Revision (2000) (Tr. 375-386).

In 2010, Dr. Horton also treated Plaintiff for depression and anxiety (Tr. 387-391). On February 11, 2010, Plaintiff "was wondering with all of her problems why she should go on with life." She was prescribed strong medications such as Xanax (for anxiety and panic)[2] and Abilify (an anti-psychotic).[3] (Tr. 388).

---

2 Side effects of Xanax include: "drowsiness, dizziness, feeling tired or irritable, blurred vision, headache, memory problems, trouble concentrating, sleep problems (insomnia); swelling in hands or feet, muscle weakness, lack of balance or coordination, slurred speech" and others. http://www.drugs.com/xanax.html (last visited Jan. 6, 2013) (Doc. 10, Plaintiff's Brief at p. 5).
3 The side effects of Abilify include: "fever, stiff muscles, confusion, sweating, fast or uneven heartbeats, jerky muscle movements you cannot control, sudden numbness or weakness,

6

Plaintiff was treated at Johnson Mental Health for bipolar disorder with psychotic features and obsessive-compulsive disorder (Tr. 397-407, 411-415). She reported "violent dreams," and that she had days that she did not "want to see or talk to others." She did not "want to go anywhere without her husband." (Tr. 401). She reported trouble sleeping and anxiety when leaving her home (Tr. 404). She struggled with "worthlessness," occasional visual hallucinations, and paranoia. *Id*. She had "obsessive worries" about her daughter (Tr. 406).

Several months after Plaintiff's December 2010 hearing, DDS sent Plaintiff for a physical consultative exam with Dr. Edward Johnson (Tr. 416-427). DDS provided Dr. Johnson with a "Medical Source Statement" form (Tr. 422-427). Dr. Johnson completed this form, which asked Dr. Johnson to opine on various work-related restrictions. *Id*. Among other limitations, Dr. Johnson limited Plaintiff to walking 6 hours in an 8 hour work day (Tr. 423). This exam was proffered to Counsel; and Counsel responded in less than two weeks (on February 15, 2011) (Tr. 193-195 (14E)).

DDS also obtained a consultative opinion in the form of a Physical Residual Functional Capacity Assessment on Plaintiff's physical limitations from a "D. Ferlic." (Tr. 428-435). It is dated December 11, 2009 (Tr. 435). However, Plaintiff asserts this exhibit was never proffered to Counsel, and was not made part of the Record until the ALJ rendered his decision. This assessment restricts Plaintiff to standing and walking "at least 2 hours in an 8-hour workday," among other restrictions (Tr. 429). Counsel asserts he never had the opportunity to respond to this evidence at the administrative level due to Social Security's failure to proffer this evidence to Counsel. The Commissioner does not appear to contest this.

---

headache, confusion, or problems with vision, speech, or balance," and others. (Doc. 10, Plaintiff's Brief at p. 5).

In considering the opinion evidence concerning Plaintiff's impairments, the ALJ states that he gave "great weight" to:

1) "the opinions of the claimant's treating physicians,"

2) "to the reports of the medical testing," and

3) "the reports of the State Agency's consultants …"

(Tr. 20).

None of the treating physicians actually commented on Plaintiff's work-related restrictions. Further, "the reports of medical testing" (assuming the ALJ was referring to the diagnostic evidence, such as MRIs) do not discuss Plaintiff's functions in terms of her capacity for work. Thus, the ALJ presumably gave "great weight" to the opinions of one or more of the State Agency consultants as to work related capacity. The ALJ found that Plaintiff had the functional abilities to perform unskilled or low-level semiskilled work at the "light" level of physical exertion with some non-exertional limitations (Tr. 19).

## Analysis

*The RFC Assessment*

Because I cannot know from his opinion how the ALJ concluded Plaintiff had the residual functional capacity to perform light work and because I conclude Plaintiff was inadvertently denied due process by not being given the opportunity to comment upon an opinion of a State Agency Physician which is at least arguably contradictory to the RFC finding of the ALJ, I conclude remand is necessary in this case.

Plaintiff first contends in her opening and responsive brief that the ALJ was required to perform a function-by-function analysis of Plaintiff's exertional limitations (sit, stand, walk, lift, carry, push, pull) before placing those limitations into a class of limitations ("Light" work) in his RFC determination (Doc. 10, Plaintiff's Brief at pp. 6-10). Defendant responds that the ALJ's

8

decision was supported by substantial evidence because the ALJ quoted the Regulation that defines "Light" work in general, and that even if this was error, it was harmless (Doc. 12, Defendant's Brief at pp. 3-5). However, Plaintiff argues both her hearing testimony and State Agency Physician, Doctor Ferlic,[4] provide testimony that is inconsistent with an RFC allowing for a full range of "Light" work as defined by the Regulation cited by the ALJ. Because the ALJ did not give any specific written analysis of how he resolved these discrepancies, I agree with Plaintiff that his analysis is therefore not reviewable and remand is required.

Aside from some non-exertional limitations (limitations that do not fall into the categories of sit, stand, walk, lift, carry, push, pull), the ALJ found that Plaintiff could perform a full range of "Light" work as described in 20 C.F.R. § 1567(b) (Tr. 19). That regulatory definition states:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 1567(b).

The Commissioner's Ruling SSR 83-10 goes on to point out that "the primary difference between sedentary and most light jobs" is the amount of standing and walking required.

The Record contains evidence contrary to the ALJ's finding that the Plaintiff could do the full range of exertion required for Light work. First, the general regulatory definition of "Light" work includes jobs that involve "sitting most of the time." 20 C.F.R. § 1567(b). However, "Light" work includes "relatively few" sitting jobs. See SSR 83-10. Further, the definition notes

---

4 "D. Ferlic's" credentials (and gender) are not noted in the record. The Commissioner has referred to this person as "Dr. Ferlic," an assumption that Plaintiff will accept in her brief.

9

that a person who can do "Light" work can also do "Sedentary" work unless there are additional factors such as "inability to sit for long periods of time." *Id*. Plaintiff testified that it is "painful to sit" and that she can only sit for 15 minutes at a time (Tr. 35). She testified that "four out of seven" days of the week, she is in so much pain that she can only lay in a recliner or on a couch (Tr. 36). As Plaintiff points out, the ALJ does not discuss how this conflicting evidence is compatible with "Light" work (Tr. 19). It is possible that the ALJ had a reason to reject these restrictions but even if he had a valid rationale for rejecting this evidence, as the Plaintiff points out, he did not convert it into a written, reviewable form.

Secondly, the general regulatory definition of "Light" work requires a person to do "a good deal of walking or standing." 20 C.F.R. § 1567(b). At the hearing, Plaintiff testified that her back impairment causes pain and numbness in her legs, and that she can only stand and/or walk for 10-15 minutes before she needs to rest (Tr. 35). Plaintiff complained that her back pain created "radiation across/into both hips and down both legs to the knees" (when talking to Dr. Johnson) (Tr. 355). Dr. Johnson noted that, "She had positive standing flexion test on the right indicating hypomobility of the right SI joint. There was pain to palpation of the SI joints bilaterally, right greater than left indicating sacroiliitis." (Tr. 355). Dr. Ferlic opined that Plaintiff can walk for 2 hours per workday (Tr. 429). The ALJ does not discuss how this conflicting evidence is compatible with "Light" work, either (Tr. 19). The ALJ's analysis, if he did analyze this discrepancy, is nowhere to be found in his Decision.

Reviewability is mandatory in ALJ Decisions. If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand. And that is so even if [the Commissioner] can offer proper post hoc explanations for such unexplained conclusions. *Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987) (internal citations omitted); *see also Owens v. Heckler*, 748 F.2d 1511, 1516 n. 6 (11th Cir. 1984); *Gonzalez v.*

10

*Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion ..."); *Heston v. Commissioner*, 245 F.3d 528, 536 (6th Cir. 2001)(the Secretary is the "fact-finder" and it is the Secretary's job to evaluate evidence); *Rogers v. Commissioner*, 486 F.3d 234, 248-249 (6th Cir. 2007)(ALJ's findings must permit later review by the Court). In *Morehead Marine Services v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998), the court noted that the Administrative Procedures Act requires an ALJ to identify the reasons and basis for his conclusions and held that strict adherence to that requirement is critical to the appellate review process. Remand was necessary even though substantial evidence supported the ALJ's decision. *Id*. Boilerplate references to applicable regulations, without further explanation, are insufficient to meet the requirements of a properly supported opinion. *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010).

Under *Christephore v. Comm'r of Soc. Sec.*, functions such as sitting, standing, walking, etc. need to be analyzed in a separate, reviewable form. 2012 U.S. Dist. LEXIS 83978, *35-36 (E.D. Mich. 2012). I conclude a function-by-function assessment is needed in this case because the findings on specific functions are disputed. Further, the ALJ must do more than just mention each limitation and state his conclusion about each function; he must actually discuss how the evidence supports that conclusion.

Based on the state of the current record and the ALJ's decision, I am not able to discern the underlying basis for the ALJ's conclusion that plaintiff retains the functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally; to stand and/or walk for 6 hours in an 8-hour workday; and to perform the other postural functions listed in the RFC assessment. (Tr. 15). The ALJ was required to cite some substantial medical and other evidence in the record to support his findings on plaintiff's functional abilities. Here there is evidence which may support his conclusion but there is contradictory evidence as well, including evidence which was

11

not shown to Plaintiff prior to the decision. For this reason and because I conclude Plaintiff was denied due process in not having an opportunity to point out the limitations of Dr. Ferlic in the "missing" report, I conclude the ALJ's RFC determination is not supported by substantial evidence and requires remand.

The ALJ found Plaintiff was not disabled because she could perform her past relevant work under the regulatory definition of "Light" work (Tr. 21). If the ALJ had performed a proper function-by-function analysis, he may have found that she could not perform the requirements of "Light" work. For example, the ALJ could have concluded Plaintiff could not perform "a good deal of walking or standing" under the standard regulatory definition of "Light" work since she can only stand/walk for 2 hours a day, as opined by Dr. Ferlic. The burden would then shift to the Commissioner to show there was other work she could perform.

Plaintiff argues a function-by-function assessment would likely have led the ALJ to the conclusion that Plaintiff cannot do the full range of "Light" work as defined in the regulation. Plaintiff notes that the opinion of Dr. Ferlic, which the ALJ states received "great weight" (since he is one of the "State Agency consultants"), limits Plaintiff to 2 hours of walking/standing per day. Plaintiff argues this finding is incompatible with the "good deal of standing or walking" required by "Light" work under the regulatory definition (SSR 83-10) (Tr. 20). Since "the primary difference between sedentary and most light jobs" is the amount of standing and walking required, and since Light work includes "relatively few" seated jobs, it appears to me that a limitation to 2 hours of standing and walking, if accepted, might have placed Plaintiff's RFC closer to Sedentary exertion than to Light, potentially resulting in a favorable decision based on Grid Rule 201.14. 20 C.F.R. Pt. 404, Subpt. P, App'x 2 (Medical-Vocational Guidelines). The ALJ did not perform the necessary function-by-function analysis, and in some cases it might not make a difference, but in this case I conclude it makes his reasoning in this case impossible

12

to review. We do not know why he found the Plaintiff able to perform a full range of Light work because he did not specifically address the evidence in the record which conflicts with that finding, including an RFC assessment of a State Agency Physician whose report was not made available for Plaintiff's comments. I conclude the error is not harmless under these circumstances.

*The Due Process Argument*

Plaintiff next argues a Physical Consultative opinion of Dr. Ferlic was not shown to Counsel for Plaintiff and that this violates agency regulations. In *Wilson v. Commissioner*, 378 F.3d 541, 545 (6th Cir. 2004), the court held that an agency is bound to follow its own regulations even when the regulations provide protections more generous than the agency would otherwise be required to provide. In *Buchanan v. Apfel*, 249 F.3d 485, 492 (6th Cir. 2001), the court held that the Commissioner has a clear, nondiscretionary duty to comply with his own regulations. In *Pickard v. Commissioner*, 224 F. Supp. 2d 1161, 1167 (W.D. Tenn. 2002), the court held that the "Hearings, Appeals and Litigation Law Manual,[5]" known as the "HALLEX" contains the Commissioner's interpretation of his own regulations and Plaintiff argues it is entitled to deference. The provisions of HALLEX I-2-7-30[6] are set out in Plaintiff's Memorandum (Doc. 10) at pages 11 and 12. I will not repeat them here but those procedures were not followed.

HALLEX I-2-7-35[7] provides:

If an ALJ enters post hearing evidence into the record without proffer, the ALJ must ensure that the claimant waived the right to examine the evidence and to appear at a supplemental hearing. The waiver may have been made on-the-record at the hearing or by a

---

5 The HALLEX may be viewed online at http://ssa.gov/OP_Home/hallex/hallex.html
6 Available at http://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-30.html
7 http://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-35.html

13

signed written statement. Regardless of the form of the waiver, the ALJ must ensure on-the-record that the claimant (especially a pro se claimant) is fully informed of and understands the effects of the waiver. If the waiver was by a signed written statement, the ALJ must enter the statement into the record as an exhibit. Thus, the ALJ must allow a claimant to review all the evidence in her case, or must have an on-the-record statement by the claimant that he/she understands and consents to waiver of proffer.

The Commissioner does not think this requires remand and argues, "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (internal quotation marks omitted). Due process requires that Social Security hearings be full and fair. *See Ferriell v. Comm'r of Soc. Sec.,* 614 F.3d 611, at 620 (6th Cir. 2010) (citing *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996)). To determine if a hearing is full and fair, a court must evaluate three factors: (1) the private interest affected by the action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and *Flatford*, 93 F.3d at 1306). Due process, unlike some legal rules is not a technical conception with a fixed content unrelated to time, place, and circumstances. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 1748 (1961). It is also the case that an arguable defect in administrative proceedings does not, in and of itself, mandate reversal of an agency's action. *See Davis v. Chater*, 1996 WL 732298, *3 (6th Cir. 1996) (citing *Brock v. Pierce County*, 476 U.S. 253, 260, 106 S. Ct. 1834, 1839 (1986)); *James v. Barnhart*, 177 Fed.Appx. 875, 877 (11th Cir. 2006)(finding no due process violation where the post-hearing consultative

examination report was consistent with other evidence of record and was not the sole basis used by the ALJ to discredit the claim of disability) (Doc. 12, Commissioner's Memorandum, pp. 6-7).

As to factors 1 and 3 referred to in *Mathews* and *Flatford*, the Commissioner essentially concedes Plaintiff has an important private interest at stake, and I conclude that remand does not create any unusual fiscal or administrative burden. In light of the intense pressure on the Administrative Law Judges because of the size of their caseloads, it is not unusual for a case to be remanded. These are complex cases. It is inevitable that some issues may be overlooked by an ALJ. In this case the ALJ may have been aware of Dr. Ferlic's opinion and considered it, but on this record I cannot tell if it was assessed or not. If it was, I cannot tell what the ALJ's view of it was. Temporally, Dr. Ferlic's December 11, 2009, opinion is about two years prior to the February 16, 2011 decision but does not appear in the record until after the February 3, 2011 examination of Dr. Johnson. As to the 2nd factor, the Commissioner argues Plaintiff failed to show that procedures used in the case raised the risk of an erroneous deprivation of his interest. I disagree.

The Commissioner goes on to argue the HALLEX is merely an internal procedural manual that has no binding effect. In her response brief (Reply) Plaintiff acknowledges this position and then points out, however, the Claimant's right to review the evidence in her case is found not only in the HALLEX, but in the Regulations:

> If, for any reason, additional evidence is obtained or developed by us after your disability hearing, and all evidence taken together can be used to support a reconsidered determination that is unfavorable to you with regard to the medical factors of eligibility, we will notify you, in writing, and give you an opportunity to review and comment on the additional evidence. You will be given 10 days from the date you receive our notice to submit your comments (in writing or, in appropriate cases, by telephone), unless there is good cause for granting you additional time, as illustrated by the examples in § 404.911(b). **Your comments will be considered before a reconsidered determination is issued.**

15

20 CFR 404.916(f) (emphasis added).

In *Buchanan v. Apfel*, the Sixth Circuit held that the Commissioner has a clear, nondiscretionary duty to comply with his own regulations. 249 F.3d 485, 492 (6th Cir. 2001). Thus, an ALJ is not permitted to deny a claimant when there is evidence that was never shown to the claimant.

Further, the United States Circuit Courts have established that due process requires that a Claimant be given the opportunity to review and respond to all the evidence in her case before it is denied. The Sixth Circuit summarized:

> While the Secretary may consider evidence obtained post-hearing, *see generally Lawson v. Secretary of Health and Human Servs.*, 688 F.2d 436, 439-40 (6th Cir. 1982), **the claimant must be given an opportunity to review the evidence** and, if desired, an opportunity to cross-examine the authors, or to rebut such a report. *See Wallace v. Bowen*, 869 F.2d 187, 190-92 (3d Cir. 1988); *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984); *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983); *Cowart v. Schweiker* 662 F.2d 731, 737 (11th Cir. 1981); *Gullo v. Califano*, 609 F.2d 649, 650 (2d Cir. 1979) (*per curiam*). As the ALJ did not provide Watkins an opportunity to review or rebut Dr. Lee's supplemental report, we conclude that the Secretary **violated Watkins's due process rights**.

*Watkins v. Secretary of Health & Human Servs.*, 1993 U.S. App. LEXIS 26347, 3-4 (6th Cir. 1993)(*emphasis added*); *see also Laddy v. Astrue*, 2012 U.S. Dist. LEXIS 30712 (N.D. Ohio 2012)(following *Watkins*). *Watkins* also establishes that the remedy for a violation of the Claimant's due process rights is reversal and remand. *Watkins*, 1993 U.S. App. LEXIS 26347 at 3-4.

Thus, Plaintiff had a due process right to review and comment on the opinion of Dr. Ferlic. As Plaintiff argues, her counsel would have responded to this new evidence, making many of the same arguments made herein. Specifically, Counsel might have argued that Dr. Ferlic's opinion, in conjunction with the record as a whole, supported a lower capacity for

16

standing and walking than found by the ALJ, and may very well have been disabling. At the very least, Dr. Ferlic's 2-hour walking/standing restriction, if accepted, limits Plaintiff to less than the full range of Light work, and requires an examination of the Medical-Vocational guidelines. In any case, contrary to the Defendant's arguments that Plaintiff has an opportunity now to comment on this opinion, now is not the time. It is the ALJ's job, not mine, to evaluate the evidence and substantive arguments regarding disability, and then to make a well-reasoned, well-explained decision that can be reviewed by the Court if necessary. Because the ALJ did not proffer Dr. Ferlic's opinion, Plaintiff had no opportunity to make her points to the ALJ. Thus, this case must be remanded so that Plaintiff may exercise her due process right to respond to all the evidence in her case. In this case, the ALJ found Plaintiff capable of the full range of "Light" work except he limited her to unskilled and low level semiskilled work, finding her moderately limited in the ability to deal with co-workers, supervisors, and the general public and moderately limited in adapting to work–related changes. From an exertional standpoint this was light work. The ALJ failed to discuss contested, disputed limitations within the opinions to which he gave "great weight." Further, the ALJ added new evidence to the record just before making his decision, and did not provide Plaintiff an opportunity to comment on the newly-added evidence. I actually have no reason to believe this was in any way intentional. I commend the ALJs for the difficult task they face in adjudicating a vast number of cases in a limited time. However here, I must recommend remand.

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude the findings of the ALJ and the decision of the Commissioner that Plaintiff can perform light work is not supported by substantial evidence for the reasons set forth above. However, evidence of disability is not overwhelming and there is some evidence to support the Commissioner therefore remand is the appropriate remedy. Accordingly, I RECOMMEND that:

1. Plaintiff's motion for judgment on the pleadings (Doc. 9) seeking judgment as a matter of law be GRANTED in PART to the extent it can be said to seek remand under Sentence Four of 42 U.S.C. § 405(g).

2. Defendant's motion for summary judgment (Doc. 11) be DENIED.

3. The Commissioner's decision denying benefits be REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.[8]

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[8]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).